**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOUGLAS KRILEY** and **TINA KRILEY,** ) | |
| **THOMAS A. MICHEL** and **CAROL L.** ) | |
| **MICHEL**, **GERALDINE C. WIEFLING**, and ) | |
| **CHARLES E. WADDINGHAM II** and ) | |
| **CAROL G. WADDINGHAM**, individually and ) | |
| on behalf of all those similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| **XTO ENERGY INC.,** ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT — CLASS ACTION**

Plaintiffs Douglas Kriley and Tina Kriley, Thomas A. Michel and Carol L. Michel, Geraldine C. Wiefling, and Charles E. Waddingham II and Carol G. Waddingham, individually and on behalf of all those similarly situated, by their counsel, David A. Borkovic, file this Class Action Complaint against XTO Energy Inc. and in support thereof allege upon personal information and upon information and belief as follows:

I. INTRODUCTION

1.     XTO Energy Inc. ("XTO") produces gas and its constituents in Western Pennsylvania under various standard form oil and gas leases. This action arises out of one of the standard form oil and gas leases XTO drafted and developed under which XTO must pay royalties based on a percentage of the sales proceeds XTO actually received less certain post-production costs XTO actually incurred. In order to evade the language it wrote in the leases, XTO uses a wholly owned subsidiary to provide certain post-production services. XTO authorized and/or

caused its wholly owned subsidiary to charge inflated, above-market prices for the subsidiary's services, and XTO deducted the excessive post-production costs when it calculated royalties paid to the representative plaintiffs and the class.  Through this ruse, XTO breached the oil and gas leases by artificially reducing the royalties it paid and inflating its own profits and income.  In addition, XTO has failed to pay royalties due on production that occurred during a number of months in 2019.  Through this action, plaintiffs and those similarly situated seek to recover their damages XTO caused.

The Parties

2.    Plaintiffs Douglas Kriley and Tina Kriley, husband and wife, are citizens of the Commonwealth of Pennsylvania who reside in Butler, Pennsylvania.

3.    Plaintiffs Thomas A. Michel and Carol L. Michel, husband and wife, are citizens of the Commonwealth of Pennsylvania who reside in Butler, Pennsylvania.

4.    Plaintiff Geraldine C. Wiefling is a citizen of the Commonwealth of Pennsylvania who resides in Butler, Pennsylvania.

5.    Plaintiffs Charles E. Waddingham II and Carol G. Waddingham, husband and wife, are citizens of the Commonwealth of Pennsylvania of Pennsylvania who reside in Butler, Pennsylvania.

6.    Defendant XTO Energy Inc. ("XTO") is a corporation organized and existing pursuant to the laws of the State of Delaware whose principal place of business is located in Spring, Texas.  XTO is a citizen of the State of Delaware and the State of Texas.  XTO is a wholly owned subsidiary of Exxon Mobil Corporation.  As described more fully below, XTO conducts business in the Western District of Pennsylvania; explores for and produces gas and its constituents from

2

gas wells located in the Western District of Pennsylvania; and pays royalties to royalty interest owners for gas it produces in the Western District of Pennsylvania.

JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The citizenship of the individual and representative plaintiffs is diverse from the citizenship of XTO.  Upon information and belief, the number of members of the proposed plaintiff class as defined in the Complaint substantially exceeds 100 and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

8.      In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).  Ms. Wiefling, individually and as a representative plaintiff, is a citizen of Pennsylvania.  Defendant XTO is a citizen of both Delaware and Texas.  The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

9.      This Court further has jurisdiction pursuant to 28 U.S.C. § 1332(a) because of the claim of Mr. & Mrs. Waddingham.  Mr. & Mrs. Waddingham, individually and as representative plaintiffs, are citizens of Pennsylvania.  Defendant XTO is a citizen of Delaware and Texas.  The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10.      This Court also has jurisdiction over the claims of Mr. & Mrs. Kriley and Mr. & Mrs. Michel who are citizens of Pennsylvania and over the claims of each class member pursuant to 28 U.S.C. § 1367(a).

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that: (i) XTO is a resident of this District; (ii) a substantial part of the events giving rise to the claims occurred in this District; and additionally, (iii) the property that is the subject of this action is situated in this District.

3

<u>Events Giving Rise to the Claims</u>

12.    At all relevant times, XTO has explored for and produced natural gas and its constituents in the Commonwealth of Pennsylvania.  XTO generally obtains its rights to the natural gas and its constituents through standard form oil and gas leases it drafted and developed, some of which name XTO as the lessee.

13.    Mr. & Mrs. Kriley own approximately 10.113 acres of oil and gas interests located in Summit Township, Butler County, Pennsylvania.  They entered into a standard form oil and gas lease dated April 26, 2017, with XTO that covered approximately 10.113 acres of oil and gas interests located in Summit Township, Butler County, Pennsylvania (the "Kriley Gas Lease").  A true and correct copy of the Kriley Gas Lease is attached as Exhibit A.

14.    XTO drafted and prepared the standard form Kriley Gas Lease.

15.    Under the standard form Kriley Gas Lease, XTO promised to pay Mr.& Mrs. Kriley a royalty equal to 15% of the sales proceeds XTO actually received less 15% of all post-production costs and 15% of all production, severance and ad valorem taxes.  Specifically, Section 2(b) of the Kriley Gas Lease provided:

> Lessee covenants and agrees: …
>
> (b)    to pay Lessor as a royalty, for the native gas and casinghead gas or other gaseous substances (including shale gas), produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to fifteen percent (15%) of the sales proceeds actually received by Lessee from the sale of such production, less fifteen percent (15%) of all "Post Production Costs " as defined below, and less fifteen percent (15%) of any and all taxes, including without limitation, production, severance, and ad valorem taxes. As used in this provision, Post Production Costs shall include, without limitation, (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing, and transportation costs incurred in connection with the sale of such production. Lessor acknowledges and agrees that this lease (i) expressly provides that the Lessor shall bear part of the costs incurred between the

wellhead and the point of sale, (ii) identifies with particularity the specific deductions Lessee intends to take from the royalty, and (iii) indicates the method of calculating the amount to be deducted from the royalty for Post Production Costs[.]

16.     XTO has produced and sold gas and natural gas liquids under the terms of the Kriley Gas Lease.  XTO is responsible for paying royalties under the Kriley Gas Lease, and it has purported to pay some, but not all, royalties under said lease.

17.     Mr. & Mrs. Michel own approximately 6.72 acres of oil and gas interests located in Summit Township, Butler County, Pennsylvania.  They entered into a standard form oil and gas lease dated April 20, 2017, with XTO that covered approximately 6.72 acres of oil and gas interests located in Summit Township, Butler County, Pennsylvania (the "Michel Gas Lease").  A true and correct copy of the Michel Gas Lease is attached as Exhibit B.

18.     XTO drafted and prepared the standard form Michel Gas Lease.

19.     Under the standard form Michel Gas Lease, XTO promised to pay Mr.& Mrs. Michel a royalty equal to 15% of the sales proceeds XTO actually received less 15% of all post-production costs and 15% of all production, severance and ad valorem taxes.  Specifically, Section 2(b) of the Michel Gas Lease provided:

Lessee covenants and agrees: …

(b)     to pay Lessor as a royalty, for the native gas and casinghead gas or other gaseous substances (including shale gas), produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to fifteen percent (15%) of the sales proceeds actually received by Lessee from the sale of such production, less fifteen percent (15%) of all "Post Production Costs " as defined below, and less fifteen percent (15%) of any and all taxes, including without limitation, production, severance, and ad valorem taxes. As used in this provision, Post Production Costs shall include, without limitation, (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing, and transportation costs incurred in connection with the sale of such production. Lessor acknowledges and agrees that this lease (i) expressly provides that the Lessor shall bear part of the costs incurred between the

wellhead and the point of sale, (ii) identifies with particularity the specific deductions Lessee intends to take from the royalty, and (iii) indicates the method of calculating the amount to be deducted from the royalty for Post Production Costs[.]

20.     XTO has produced and sold gas and natural gas liquids under the terms of the Michel Gas Lease.  XTO is responsible for paying royalties under the Michel Gas Lease, and it has purported to pay some, but not all, royalties under said lease.

21.     Mrs. Wiefling owns approximately 63.49 acres of oil and gas interests located in Jefferson Township, Butler County, Pennsylvania.  She and her deceased husband entered into a standard form oil and gas lease dated October 30, 2014, with XTO that covered approximately 63.49 acres of oil and gas interests located in Jefferson Township, Butler County, Pennsylvania (the "Wiefling Gas Lease").  A true and correct copy of the Wiefling Gas Lease is attached as Exhibit C.

22.     XTO drafted and prepared the standard form Wiefling Gas Lease.

23.     Under the standard form Wiefling Gas Lease, XTO promised to pay Mrs. Wiefling a royalty equal to 15% of the sales proceeds XTO actually received less 15% of all post-production costs and 15% of all production, severance and ad valorem taxes.  Specifically, Section 2(b) of the Wiefling Gas Lease provided:

Lessee covenants and agrees: …

(b)     to pay Lessor as a royalty, for the native gas and casinghead gas or other gaseous substances (including shale gas), produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to fifteen percent (15%) of the sales proceeds actually received by Lessee from the sale of such production, less fifteen percent (15%) of all "Post Production Costs " as defined below, and less fifteen percent (15%) of any and all taxes, including without limitation, production, severance, and ad valorem taxes. As used in this provision, Post Production Costs shall include, without limitation, (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression,

treatment, processing, marketing, and transportation costs incurred in connection with the sale of such production. Lessor acknowledges and agrees that this lease (i) expressly provides that the Lessor shall bear part of the costs incurred between the wellhead and the point of sale, (ii) identifies with particularity the specific deductions Lessee intends to take from the royalty, and (iii) indicates the method of calculating the amount to be deducted from the royalty for Post Production Costs[.]

24.     XTO has produced and sold gas and natural gas liquids under the terms of the Wiefling Gas Lease.  XTO is responsible for paying royalties under the Wiefling Gas Lease, and it has purported to pay some, but not all, royalties under said lease.

25.     Mr. & Mrs. Waddingham own approximately 50.55 acres of oil and gas interests located in Jefferson Township and Summit Township, Butler County, Pennsylvania, and approximately 10.00 acres of oil and gas interests located in Summit Township, Butler County, Pennsylvania.  They entered into a standard form oil and gas lease dated September 30, 2014, with XTO that covered the approximately 50.55 acre parcel of oil and gas interests located in Jefferson Township and Summit Township, Butler County, Pennsylvania (the "Waddingham 50 Acre Gas Lease").  A true and correct copy of the Waddingham 50 Acre Gas Lease is attached as Exhibit E. Mr. & Mrs. Waddingham also entered into a standard form oil and gas lease dated September 30, 2014, with XTO that covered the approximately 10 acre parcel of oil and gas interests located in Summit Township, Butler County, Pennsylvania (the "Waddingham 10 Acre Gas Lease").  A true and correct copy of the Waddingham 10 Acre Gas Lease is attached as Exhibit D.

26.     XTO drafted and prepared the standard form Waddingham 50 Acre Gas Lease and the Waddingham 10 Acre Gas Lease.

27.     Under the standard form Waddingham 50 Acre Gas Lease and the Waddingham 10 Acre Gas Lease, XTO promised to pay Mr.& Mrs. Waddingham a royalty equal to 15% of the sales proceeds XTO actually received less 15% of all post-production costs and 15% of all

production, severance and ad valorem taxes.  Specifically, Section 2(b) of each of the Waddingham gas leases provides:

> Lessee covenants and agrees: …
>
> (b)      to pay Lessor as a royalty, for the native gas and casinghead gas or other gaseous substances (including shale gas), produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to fifteen percent (15%) of the sales proceeds actually received by Lessee from the sale of such production, less fifteen percent (15%) of all "Post Production Costs " as defined below, and less fifteen percent (15%) of any and all taxes, including without limitation, production, severance, and ad valorem taxes. As used in this provision, Post Production Costs shall include, without limitation, (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing, and transportation costs incurred in connection with the sale of such production. Lessor acknowledges and agrees that this lease (i) expressly provides that the Lessor shall bear part of the costs incurred between the wellhead and the point of sale, (ii) identifies with particularity the specific deductions Lessee intends to take from the royalty, and (iii) indicates the method of calculating the amount to be deducted from the royalty for Post Production Costs[.]

28.      XTO has produced and sold gas and natural gas liquids under the terms of the Waddingham 50 Acre Gas Lease and the Waddingham 10 Acre Gas Lease.  XTO is responsible for paying royalties under the Waddingham gas leases, and it has purported to pay some, but not all, royalties under said leases.

29.      The gas royalty provision in the standard form oil and gas leases for each of the individual and representative plaintiffs is the same.

30.      At all relevant times, XTO has been responsible for calculating and paying royalties under the oil and gas leases attached as Exhibits A through E to this Complaint and those of the class members.

FAILURE TO PAY ROYALTIES

31.     XTO has pooled and unitized the oil and gas leases of the individual and representative plaintiffs into units called Praeger Unit A and Praeger Unit B.  XTO started producing gas from Praeger Unit A and Praeger B Unit in or about February 2019, and it has produced gas from the units since that time.

32.     Upon information and belief, XTO produced and sold gas from Praeger Unit A and Praeger B Unit in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019 and August 2019.  XTO has failed to pay royalties to Plaintiffs and the class for gas it produced and sold in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019 and August 2019.

33.     Despite written demand for payment, XTO has failed to pay the royalties due, with statutory interest, for production and sale of gas and its constituents from Praeger Unit A and Praeger B Unit during February 2019 through August 2019.  Plaintiffs, individually and as representatives of all those similarly situated, demanded payment and have also transmitted another written demand for payment of said royalties.

DEDUCTION OF EXCESSIVE POST-PRODUCTION EXPENSES

34.     As described above, XTO is permitted to deduct certain post-production costs in calculating the royalties due plaintiffs and the class under Exhibits A through E to this Complaint and under the royalty provisions of the leases of those similarly situated to Plaintiffs.

35.     XTO does not sell gas on a well-by-well basis.  XTO's marketing and sales arrangements are not well-specific but instead cover large areas.  XTO averages its sales over a large area in a month to arrive at a single monthly price for all commingled gas sold from the same area.

36.     XTO similarly does not compute post-production costs on a well-by-well basis.  As is standard in the industry, XTO determines its annual post-production costs for a large area, typically a field, and then allocates or distributes those costs to all wells in the covered area.

37.     Mountain Gathering, LLC, ("Mountain Gathering") is a limited liability company organized and existing under the laws of the State of Delaware.  At all relevant times, Mountain Gathering was a wholly owned subsidiary of XTO.

38.     Mountain Gathering provides gathering services and processing services for oil and gas produced by XTO, including gathering and processing services in Butler County, Pennsylvania.

39.     At all relevant times, XTO engaged Mountain Gathering to provide gathering services and processing services in connection with the operations under the oil and gas leases of the representative plaintiffs and those similarly situated.

40.     XTO owned and controlled and continues to own and control Mountain Gathering.  The prices XTO paid to Mountain Gathering for gathering and processing were not determined as a result of arms' length negotiations and did not represent reasonable, market-based, competitive prices.  XTO has the ability to set the prices it and the Plaintiffs and those similarly situated will pay Mountain Gathering.  The prices that Mountain Gathering and XTO agreed would be paid to Mountain Gathering for gathering and processing services were excessive and substantially above prices that would have been determined as a result of arms' length negotiations.

41.     By way of illustration and not limitation, Rex Energy and its successor in interest, PennEnergy, produced gas under oil and gas leases covering areas that are near or essentially adjacent to XTO's operations in Butler.  PennEnergy/Rex Energy deducts approximately 24% to 25% of the sale proceeds as expenses; XTO's deductions normally exceed 36% of the proceeds

from the sale of gas. XTO deducts 50% more in post-production costs than does PennEnergy/Rex Energy. Moreover, XTO's processing charges substantially exceed normal processing charges.

42.     XTO deducts the unreasonable and excessive post-production costs that it pays Mountain Gathering from the proceeds of sales when it calculates royalties under the oil and gas leases of the representative plaintiffs and those similarly situated.

43.     By paying unreasonable, excessive post-production costs to its wholly owned subsidiary when it calculated royalties, XTO underpaid royalties to lessors. It could and, upon information and belief, did receive benefits from the excessive expense charges it paid its wholly owned subsidiary. In so doing, XTO forced the representative plaintiffs and those similarly situated to bear more than their share of the post-production costs.

44.     XTO has a duty to perform the oil and gas leases and to calculate royalties in good faith and fairly.

45.     XTO could only deduct reasonable post-production costs – costs that reflected prices that were freely negotiated at an arm's length – when calculating royalties under the oil and gas leases of the representative plaintiffs and those similarly situated.

46.     At all relevant times, XTO breached the oil and gas leases of the representative plaintiffs and those similarly situated when it deducted unreasonably high post-production costs in calculating royalties owed to plaintiffs and those similarly situated.

47.     XTP also breached the oil and gas leases of the representative plaintiffs and those similarly situated when it failed to pay royalties to royalty interest owners for gas and its constituents produced from Praeger Unit A and Praeger Unit B during February 2019 through August 2019.

48.     At all relevant times plaintiffs have acted in good faith and have otherwise complied with all obligations under the above oil and gas leases.

49.     Plaintiffs and the members of the class have been injured by the conduct of XTO described herein.

CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action as a class action pursuant to Fed.R.Civ.P. 23, including Rules 23(a), 23(b)(2) and 23(b)(3).

51.     Plaintiffs bring this action on behalf of themselves and the following class as to Count I:

Every individual and entity who possessed a royalty ownership interest in an oil and gas lease with XTO Energy Inc. covering oil and gas interests in Pennsylvania at any time during the period of limitations who received one or more royalty payments from XTO and whose oil and gas lease states that XTO is

> to pay Lessor as a royalty, for the native gas and casinghead gas or other gaseous substances (including shale gas), produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to [X] percent ([X]%) of the sales proceeds actually received by Lessee from the sale of such production, less [X] percent ([X]%) of all 'Post Production Costs' as defined below, and less [X] percent ([X]%) of any and all taxes, including without limitation, production, severance, and ad valorem taxes. As used in this provision, Post Production Costs shall include, without limitation, (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing, and transportation costs incurred in connection with the sale of such production …

or uses essentially identical language.  The class for Count I excludes: the United States of America, the Commonwealth of Pennsylvania, and any member of a class in *Salvatora v. XTO Energy Inc*., No. 2:19-cv-01097 (W.D.Pa.).

52.    The prerequisites for class certification under Fed.R.Civ.P. 23(a) are met as to Count I in that, among other things,

A.    The members of the class are so numerous that joinder of all class members is impractical.  Plaintiffs believe and aver that the class contains substantially more than 100 members.  The precise number of class members and their identities can be ascertained from the records of XTO and its subsidiaries and affiliates.

B.    The claims of the representative plaintiffs raise questions of law and fact common to all class members.  Among the questions of law and fact that are common to the class in Count I are the following:

(i)    Whether the oil and gas lease drafted and used by XTO that forms the basis for this action is a standard form lease;

(ii)    Whether transactions with an affiliate must be treated as being arm's length transactions and at market prices;

(iii)    Whether XTO acted honestly and in good faith in determining post-production costs it deducted in determining royalties and specifically in agreeing upon prices that it would pay Mountain Gathering for gathering and processing;

(iv)    Whether the post-production expenses XTO deducted in determining the class members' royalties were excessive and unreasonably high;

(v)    Whether XTO breached the class' oil and gas leases by deducting excessive, unreasonably high post-production costs in determining the class members' royalties;

(vi)    Whether XTO and Mountain Gathering agreed upon the gathering and processing prices in order to inflate the purported post-production costs and thereby

13

shift a portion of such costs from XTO to the class members.

(vii)    Whether XTO is liable to the class for the deduction of excessive, unreasonably high post-production costs in determining the class members' royalties;

(viii)   The measure of damages for the class; and

(ix)    Whether a declaratory judgment and injunctive relief are necessary to protect the interests of the class.

(C)    The claims of the class representatives are typical of, if not identical to, the claims of each class member in Count I because the representative plaintiffs and all class members executed the same core standard form oil and gas leases with XTO and because all class members' claims arise out of the same relevant portion of the standard form oil and gas lease.

(D)    The representative plaintiffs will fairly and adequately protect the interests of all class members in Count I.  They have retained competent counsel who is experienced in complex litigation, including class action litigation related to oil and gas leases, and who will prosecute this action vigorously.  Representative plaintiffs will fairly and adequately assert and protect the interests of the class.  They do not have any interests antagonistic to or in conflict with the applicable class; their interests are antagonistic to the interests of XTO; and they will vigorously pursue the claims of the class.  Representative plaintiffs have adequate financial resources to vigorously pursue this action, including an agreement by their counsel to prosecute this action on a contingent fee basis and to advance reasonable and necessary costs and expenses of litigation.

53.     This action as to Count I may be maintained as a class action under Fed.R.Civ.P. 23(b)(3) because the questions of law and fact common to the members of each class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The pertinent factors under Rule 23(b)(3) that demonstrate that a class action is a superior method of litigating this controversy include:

(A)     The class members' interests in individually controlling the prosecution or defense of separate actions:  In view of the complexities and expense of litigation, it is impractical for class members to bring separate actions, and there is no reason to believe that the class members desire to proceed separately.  Moreover, there is a danger of inconsistent decisions interpreting the same lease if individual actions are pursued;

(B)     The nature and extent of any litigation concerning the controversy already begun by or against class members:  To plaintiffs' knowledge, no other cases are pending against XTO concerning the class members' claims, and thus, certification is appropriate on the grounds of judicial economy.  Absent class certification, a significant number of additional individual claims may be filed and pursued causing a burden on judicial resources;

(C)     The desirability or undesirability of concentrating the litigation of the claims in this forum:  The Western District of Pennsylvania is the most desirable forum to concentrate all litigation concerning the class members' claims because most, if not all, of the gas leases concern land located in this District; most, if not all, of the transactions took place in this District; and material witnesses are located in this District.  There is no better forum; and

(D)    <u>The likely difficulties in managing a class action</u>:  This case presents no unusual management difficulties, and to the contrary, is ideally suited to class treatment. The claims involve matters of contract based on the same or virtually identical contractual provisions.  Moreover, the size of the class is too large for individual litigation but not so large as to present an obstacle to manageability as a class action.

54.    Count I of this action seeks declaratory and injunctive relief and may be maintained as a class action under Fed.R.Civ.P. 23(b)(2) because the prerequisites of Fed.R.Civ.P. 23(a) are satisfied and because XTO acted or refused to act on grounds that apply generally to the class so that final injunctive and declaratory relief is appropriate.

55.    Plaintiffs bring this action on behalf of themselves and the following class as to Count II:  All members of the Class in Count I who are royalty interest owners in Praeger Unit A and/or Praeger Unit B.

56.    The prerequisites for class certification under Fed.R.Civ.P. 23(a) are met as to Count II in that, among other things,

A.    The members of the class in Count II are so numerous that joinder of all class members is impractical.  Plaintiffs believe and aver that the class contains substantially more than 100 members.  The precise number of class members and their identities can be ascertained from the records of XTO and from the unit declarations for Praeger Unit A and Praeger Unit B.

B.    The claims of the representative plaintiffs raise questions of law and fact common to all class members.  Among the questions of law and fact that are common to the class in Count II are the following:

(i)    Whether the oil and gas lease drafted and used by XTO that forms the basis

for this action is a standard form lease;

(ii)     Whether XTO paid royalties for gas and its constituents produced from Praeger Unit A and Praeger Unit B in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019, and/or August 2019;

(iii)    Whether XTO breached the oil and gas leases of the representative plaintiffs and those similarly situated by failing to pay royalties for gas and its constituents produced from Praeger Unit A and Praeger Unit B in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019, and/or August 2019; and

(iv)    The measure of damages for the class.

(C)     The claims of the class representatives are typical of, if not identical to, the claims of each class member in Count II because the representative plaintiffs and all class members executed the same core standard form oil and gas leases with XTO and because all class members' claims arise out of the same standard form oil and gas lease.

(D)     The representative plaintiffs will fairly and adequately protect the interests of all class members in Count II. They have retained competent counsel who is experienced in complex litigation, including class action litigation related to oil and gas leases, and who will prosecute this action vigorously. Representative plaintiffs will fairly and adequately assert and protect the interests of the class. They do not have any interests antagonistic to or in conflict with the applicable class; their interests are antagonistic to the interests of XTO; and they will vigorously pursue the claims of the class. Representative plaintiffs have adequate financial resources to vigorously pursue this action, including an agreement by their counsel to prosecute this action on a contingent fee basis and to advance reasonable and necessary costs and expenses of litigation.

57.    This action as to Count II may be maintained as a class action under Fed.R.Civ.P. 23(b)(3) because the questions of law and fact common to the members of each class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The pertinent factors under Rule 23(b)(3) that demonstrate that a class action is a superior method of litigating this controversy include:

(A)    The class members' interests in individually controlling the prosecution or defense of separate actions:  In view of the expense of litigation with respect to Count II, it is impractical for class members to bring separate actions, and there is no reason to believe that the class members desire to proceed separately.  Moreover, there is a danger of inconsistent decisions interpreting the same lease if individual actions are pursued;

(B)    The nature and extent of any litigation concerning the controversy already begun by or against class members:  To plaintiffs' knowledge, no other cases are pending against XTO concerning the class members' claims as to Count II, and thus, certification is appropriate on the grounds of judicial economy.  Absent class certification, a significant number of additional individual claims may be filed and pursued causing a burden on judicial resources;

(C)    The desirability or undesirability of concentrating the litigation of the claims in this forum:  The Western District of Pennsylvania is the most desirable forum to concentrate all litigation concerning the class members' claims because most, if not all, of the gas leases concern land located in this District; most, if not all, of the transactions took place in this District; and material witnesses are located in this District.  There is no better forum; and

(D)    <u>The likely difficulties in managing a class action</u>:  Count II presents no unusual management difficulties, and to the contrary, is ideally suited to class treatment.  The claims involve matters of contract based on the same or virtually identical contractual provisions.  Moreover, the size of the class is too large for individual litigation but not so large as to present an obstacle to manageability as a class action.

## COUNT I

58.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 57 of this Complaint.

59.    XTO had to perform its obligations to calculate and pay royalties to the representative plaintiffs and those similarly situated in good faith and with fair dealing.

60.    XTO agreed with/caused its wholly owned subsidiary Mountain Gathering to charge excessive, above-market amounts for gathering services and processing services that Mountain Gathering provided.  Such non-arm's length affiliate transactions cannot be used as a deduction of post-production costs in calculating royalties.  Only reasonable amounts for gathering, processing and other costs can be deducted in the royalty calculations under the oil and gas leases of the representative plaintiffs and the class members.

61.    XTO breached the oil and gas leases of the representative plaintiffs and the class members when it deducted unreasonably high costs from the royalties due plaintiffs and the class members.

62.    XTO breached the oil and gas leases of the representative plaintiffs and the class members when it shifted some of its share of the post-production costs to plaintiffs and the class members.

63.    The representative plaintiffs and the class members have been harmed by the above actions of XTO.

WHEREFORE, the representative plaintiffs demand the following for themselves and the plaintiff class against XTO:

(A)    That the Court certify the above-described class;

(B)    That judgment be entered in favor of the representative plaintiffs and the class members and against XTO Energy Inc. for all compensatory losses and damages allowed by law, including prejudgment and post-judgment interest;

(C)    That the Court enter an Order declaring that XTO breached the oil and gas leases of the representative plaintiffs and the class members and enjoining XTO from deducting unreasonably high costs and above market costs from affiliate transactions when calculating royalties; and

(D)    That the Court award costs and expenses of litigation and such other further relief as may be just and appropriate.

## COUNT II

64.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 63 of this Complaint.

65.    Plaintiffs bring Count II on behalf of themselves and all members of the Class identified in Count I who are royalty interest owners in Praeger Unit A and/or Praeger Unit B.

66.    XTO produced and sold gas from Praeger Unit A and Praeger B Unit in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019 and August 2019.  Under the terms of the oil and gas leases of the Plaintiffs and those similarly situated, XTO had to pay royalties on such gas production to the royalty interest owners.

67.    XTO failed to pay royalties to Plaintiffs and those similarly situated for gas it produced in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019 and August 2019 and sold.

68.    XTO breached the oil and gas leases of the representative plaintiffs and those similarly situated by failing to pay royalties for gas and its constituents produced from Praeger Unit A and Praeger Unit B in February 2019, March 2019, April 2019, May 2019, June 2019, July 2019, and/or August 2019.

69.    Plaintiffs and those similarly situated have been damaged by XTO's actions.

WHEREFORE, the representative plaintiffs demand the following for themselves and the plaintiff class against XTO:

(A)    That the Court certify the above-described class;

(B)    That judgment be entered in favor of the representative plaintiffs and the class members and against XTO Energy Inc. for all compensatory losses and damages allowed by law, including prejudgment and post-judgment interest; and

(D)    That the Court award costs and expenses of litigation and such other further relief as may be just and appropriate.

Dated:  March 25, 2020

**DEMAND FOR JURY TRIAL**

**Plaintiffs demand a jury trial on all issues so triable**.

                        /s/ *David A. Borkovic*
                        David A. Borkovic, Esq.
                        Pa. I.D. No. 23005
                        Of Counsel
                        Jones, Gregg, Creehan & Gerace LLP
                        Suite 1200
                        411 Seventh Avenue
                        Pittsburgh, PA  15219

(412) 261-6400
dab@jgcg.com

Counsel for the representative plaintiffs
and the class.