IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| DOUGLAS KRILEY, TINA KRILEY, THOMAS A. MICHEL, CAROL L. MICHEL, GERALDINE C. WIEFLING, CHARLES E. WADDINGHAM II, CAROL G. WADDINGHAM, INDIVIDUALLY AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED;<br><br>Plaintiffs,<br><br>vs.<br><br>XTO ENERGY INC.,<br><br>Defendant, | 2:20-CV-00416-CRE |

## MEMORANDUM ORDER

Presently pending before the Court is a motion by Defendant XTO Energy, Inc. ("XTO") to compel an answer to an interrogatory and compel answers to deposition questions regarding discussions had at pre-lawsuit meetings held at a firehall in which several Plaintiffs, putative class members and Plaintiffs' counsel attended to discuss the oil and gas leases that are subject of this putative class action. Plaintiffs assert these communications are protected by attorney-client privilege and not discoverable. XTO argues that "[t]he deposition questions and interrogatory at issue seek basic information regarding allegations Plaintiffs make as part of their request for class certification, such as the extent to which Plaintiffs' claims against XTO are the same as other putative class members' claims and the reasons for Plaintiffs becoming putative class representatives (among other things). They also seek information regarding the identity of putative class members and information regarding the basis of Plaintiffs' allegations" (ECF No. 62 at 6-7).

1

According to Plaintiffs' counsel, in the beginning of 2020, a Lessor under an XTO lease contacted Plaintiffs' counsel to obtain legal advice about the Lessor's rights under an XTO lease. (ECF No. 64 at 1-2). The Lessor informed Plaintiffs' counsel that a group of XTO lessors was interested in meeting with him for legal advice stating to Plaintiffs' counsel: "I have discussed this matter with others affected by these units and several are interested in meeting with you in the near future." *Id*. at 2. The Lessor proposed a group meeting to occur in early February 2020 stating to Plaintiffs' counsel that: "[w]e would like to have you come and talk to us. I have talked to some of the others in our unit and they would like to hear from you also." *Id*. The Lessor organized the meeting to occur on February 6, 2020 at the Herman Firehall in Butler, Pennsylvania and assembled a group of lessors "who were dissatisfied with their royalty payments from XTO." *Id*. Plaintiffs allege there were no public advertisements for this meeting and lessors heard about it through word-of-mouth. *Id*. at 3. Plaintiffs' counsel alleges that at the meeting the Lessors asked him unspecified questions that he answered. *Id*. Plaintiffs' counsel further asserts that after the meeting, he transmitted a list of contacts for attendees at the first Herman Firehall meeting. A second meeting was held at the Herman Firehall later in February 2020. According to one lessor and named-Plaintiff, Thomas Michel, approximately 50 people attended the February 6, 2020 meeting, and even more attended the second meeting. Dep. of Thomas Michel (ECF No. 65-3) at 84:1-4, 84:10-17, 96:23-25, 97:15-17.

**Interrogatory No. 8**

XTO's first set of interrogatories included an interrogatory which asked Plaintiffs: "Describe in full and specific detail all efforts Plaintiffs' counsel used to ascertain or locate Putative Class Members and/or solicit their participation in this Lawsuit. As part of this description, identify all such Putative Class Members and describe all communications with those

Putative Class Members." (ECF No. 62 at 3). Plaintiffs responded as follows: "Plaintiffs object to this Interrogatory because it is irrelevant. Subject to this Objection and the above General Objections, Plaintiffs' counsel was approached and asked to provide legal advice and representation. Any such communications are privileged." *Id*.

### Deposition Questions

XTO deposed three of the seven named-Plaintiffs and at the depositions, XTO learned of the two meetings held in early 2020 at the Herman Firehall. Two of the Plaintiffs could not remember anything about the meeting, and the other two Plaintiffs, Mr. Thomas Michel and Mrs. Carol Michel were instructed by counsel not to answer any questions regarding the contents of the meeting, Plaintiffs' counsel asserted that attorney-client privilege applied and Plaintiffs' counsel informed XTO that the remaining Plaintiffs to be deposed would also be instructed not to answer any questions regarding the discussions at these meetings. For example, among the list of questions that Mr. Michel was instructed not to answer are the following:

- What was said by the person (who was not Plaintiffs' counsel) who started off the first meeting. (ECF No. 62-1 at 88:5-90:2; 90:23-91:9);
- What answers were given – by someone other than Plaintiffs' counsel – in response to questions from persons attending the first meeting. *Id*. at 91:25-92:15;
- Whether the possibility of a lawsuit was discussed at the first meeting. *Id*. at 94:24-95:23;
- Whether anybody talked about the specifics of lease terms at the first meeting. *Id*. at 96:6-13;
- What questions Mr. Michel asked at the February meeting. *Id*. at 98:22-99:18;

3

- Whether anyone asked for volunteers to be a class representative at the February meeting. *Id*. at 99:23-100:12;

- Whether specifics of lease terms were discussed at the February meeting. *Id*. at 100:14-19;

- Whether royalty check details were discussed at the February meeting. *Id*. at 100:2-101:4;

- Whether check stubs were discussed at the February meeting. *Id*. at 101:6-10;

- Whether the expectations of the class were discussed at the February meeting. *Id*. at 102:12-16.

**Standard of Review**

In civil actions, Federal Rule of Civil Procedure 26 governs the scope of permissible discovery and permits a party to discover "any nonprivileged matter that is relevant to any party's claim or defense." The scope of discovery "is not limited to information which is admissible at trial but is instead allowed 'if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982). Thus, the scope of discovery is broader than the scope of admissible evidence and the trial court has "substantial discretion" regarding discovery motions. *Stich v. United States*, 730 F.2d 115, 118 (3d Cir. 1984).

A party moving under Rule 37 to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). If the movant meets this initial burden, then the burden shifts to the person resisting discovery to establish with specificity that discovery of the material requested is

inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996); *Josephs*, 677 F.2d at 991–92.

## Attorney-Client Privilege

Under Federal Rule of Evidence 501, in civil cases in which a claim of privilege is made, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.  In this diversity case, it is not disputed that Pennsylvania law applies to Plaintiff's claims of privilege.

Pennsylvania codified the attorney-client privilege as follows: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. Stat. and Cons. Stat. Ann. § 5928.  The party asserting the privilege has the burden of proving: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his subordinate; (3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; (4) the privilege has been claimed and is not waived. *BouSamra v. Excela Health*, A.3d 967, 983 (Pa. 2019).  After that burden has been met, the burden shifts to the party seeking disclosure to explain why the communication should not be privileged. *Id.*

Here, the assertion of privilege turns on the third factor and whether the town hall-style meeting was "without the presence of strangers" and was for the "purpose of securing either an opinion of law or legal services."  With respect to this factor, "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client

communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). Also, the attorney-client privilege will not "attach to communications made in the presence of a third party, and disclosing privileged communications to a third party waives the privilege." *Sandoz Inc. v. Lannett Co., Inc.*, 570 F. Supp. 3d 258, 265 (E.D. Pa. 2021) (citing *BouSamra*, 210 A.3d at 982).

In at least one other case applying the attorney-client privilege under Pennsylvania law found that a town-hall style meeting where a lawyer was asked to speak to union workers about the possibility of asbestosis being a compensable illness did not fall under attorney-client privilege. At that meeting, which the union president organized and advertised for, the lawyer informed the union workers at the meeting that the only people eligible to remain at the meeting were those who were seeking information concerning their legal rights in contemplation of potential litigation from exposure to asbestos, and that all matters discussed were protected by attorney-client privilege. *In re Tire Workers Asbestos Litig.*, 125 F.R.D. 617, 618–19 (E.D. Pa. 1989). At the end of the meeting, a questionnaire was made available for the union members to fill out and collected by the attorney. *Id.* One union worker testified that he attended the meeting to get legal advice, and another testified that he attended the meeting "just to see what it was about." *Id.* at 620. The court found, *inter alia*, that there was no evidence "to indicate that any type of traditional attorney-client dialogue took place" between the lawyer and the union members and did not apply the attorney-client privilege to the communications made at the meeting. *Id.* at 621.[1] *See also Morisky v. Pub.*

---

[1] While the court in *In re Tire Workers Asbestos Litig.* also found that the privilege is only applicable to communications made "by the client to counsel," and the Pennsylvania Supreme Court's 2011 decision in *Gillard*, 15 A.3d at 59 expanded the privilege to include communications made by the client to counsel and by counsel to the client, the principals and rationale underlying whether communications made at an open meeting to discuss potential litigation are protected by attorney-client privilege remain.

*Serv. Elec. & Gas Co. ("PSE&G")*, 191 F.R.D. 419, 424 (D.N.J. 2000)(refusing to apply the federal attorney-client privilege or work-product privilege to communications made through questionnaires created by attorneys, completed by potential plaintiffs and distributed at a meeting held in a public firehouse for employees about a putative class action regarding unpaid overtime wages).

Plaintiffs have not met their burden of showing the attorney-client privilege applies to the communications made at the Herman Firehall meetings. The following factors weigh against a finding that the communications made at the meetings are privileged: this lawsuit had not yet been filed before the meetings took place, the meetings were not organized by Plaintiff's counsel and were organized by the Lessor, attendees received notice of the meetings through word-of-mouth, there was no communication between counsel and any of the members (besides the Lessor) prior to the meetings, Plaintiffs' counsel had no control over who attended the meetings and has provided no evidence to verify that the individuals who attended the meetings were solely potential class members, the meetings were held in a venue that was open to the public, and at least one attendee Plaintiff Thomas Michel testified that he attended the first meeting for the purpose of consulting with other neighbors who were receiving royalty payments, not to join a lawsuit and was not actively seeking legal representation. Because Plaintiffs have not met the burden of proving the communications made at the Herman Firehall meetings were "without the presence of strangers" or was for the "purpose of securing either an opinion of law or legal services," XTO's motion to compel is GRANTED as follows:

AND NOW this 1st day of March, 2024,

IT IS HEREBY ORDERED that XTO's motion to compel (ECF No. 61) is GRANTED.

IT IS FURTHER ORDERED that

(1) Plaintiffs' objections regarding the substance of the Herman Fire Hall meetings during the Michels' depositions are OVERRULED;

(2) Plaintiffs' objections in response to Interrogatory No. 8 are OVERRULED;

(3) Mr. and Mrs. Michel may not refuse to answer XTO's questions about the two Herman Fire Hall meetings on the grounds of privilege;

(4) Mr. and Mrs. Kriley and Mr. and Mrs. Waddingham may not refuse to answer XTO's questions about the two Herman Fire Hall meetings on the grounds of privilege; and

(5) Plaintiffs shall provide a full and complete response to XTO's Interrogatory No. 8.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge

cc:   All counsel of record via CM/ECF electronic filing